**SO ORDERED.**

**SIGNED this 08 day of October, 2010.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

| | |
|---|---|
| JACK D. LONG, | CHAPTER 13 |
| MARTHA R. LONG, | CASE NO. 10-05676-8-RDD |
| DEBTORS | |

**ORDER DENYING MOTION TO EXCUSE DEBTORS FROM FILING
SCHEDULE I, SCHEDULE J, AND FORM 22 AND DENYING
MOTION FOR ORDER SETTING ALTERNATIVE DATE FOR
DETERMINING THE DEBTORS' CURRENT MONTHLY INCOME**

Pending before the Court is the Motion to Excuse Debtors from Filing Schedule I, Schedule J, and Form 22,[1] and the Motion For Order Setting Alternative Date For Determining the Debtors' Current Monthly Income, filed by Jack D. Long and Martha R. Long (the "Debtors") on July 16, 2010 (the "Motion"). Pursuant to the Motion, the Debtors request that the Court excuse them from the requirement of filing the Schedule of Current Income (Schedule I), the Schedule of Expenses (Schedule J), and Form 22 for reporting monthly disposable income

---

[1] Official Form 22C is typically filed by a Chapter 13 debtor and is the statement of current monthly income, calculation of commitment period and disposable income. This form is often referred to as Form B 22C and the Supreme Court in Hamilton v. Lanning refers to this form as Form 22. \_\_\_ U.S. \_\_\_, 130 S. Ct. 2464 (2010). For the purposes of this opinion, references to Form 22 are intended to mean Official Form 22C.

as required by 11 U.S.C. § 521(a)(1)(B)(ii) and 11 U.S.C. § 101(10A)(A)(i). The Debtors request that the Court set an alternate date for determining their current monthly income ("CMI").[2]

On September 30, 2010, the Court conducted a hearing in New Bern, North Carolina to consider the Motion.

## BACKGROUND

The Debtors filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on July 16, 2010. However, the Debtors did not file the form for reporting monthly income (Schedule I), the form for reporting monthly expenses (Schedule J), or the form for reporting monthly disposable income (Form 22) as required by 11 U.S.C. § 521(a)(1)(B)(ii) and 11 U.S.C. § 101(10A)(A)(i).

In the six months prior to the filing date, the Debtors' average monthly income was $6,932.49. This average monthly amount includes the male debtors' Veterans Administration pension payment, several months of his salary prior to his retirement from Naval Air Depot ("NADEP"), and a one time withdrawal of $10,000.00 from his Thrift Savings Plan – which is considered income for the computation of CMI under the Bankruptcy Code. The female debtor has no income. During the six month look-back period, the male debtor retired from NADEP on May 28, 2010 and began new employment on June 7, 2010 with Allegiance. At Allegiance, he earns less money than he did with NADEP. The Debtors' CMI , as calculated under 11 U.S.C. §

---

[2] CMI is defined as the average monthly income from all sources that the debtor receives...without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month preceding the petition date if the debtor files a schedule of current income and expenditures (commonly known as Schedules I and J) and any amounts paid to the debtor on a regular basis for the household expenses of the debtor or the debtor's dependents, subject to certain limitations. 11 U.S.C. § 101(10A).

101(10A)(A)(i), is significantly higher than their actual monthly income because of the one time $10,000.00 withdrawal that must be included in the six month income calculation. In fact, the Debtors' actual monthly income is $3,013.00, which includes the male debtor's Veterans' Affairs retirement of $1,406.00 per month, his pension from NADEP of $507.00, and income from the male Debtor's new employment equaling $1,100.00.[3] This amount is significantly less than the CMI of $6,932.49, as calculated during the six month period prior to the filing. The one time pension withdrawal from his retirement account skews the calculation such that it is not representative of the Debtors' current financial situation. Because the Debtors' actual monthly income is much less than the inflated CMI that was calculated under 11 U.S.C. § 101(10A)(A)(i), the Debtors argue that the inflated income in turn results in a higher disposable income than that amount that would actually be available to the Debtors on a monthly basis going forward after the filing date. Therefore, the Motion requests that the Court allow for an adjustment of the six month look-back period to allow for the disposable income calculation to present a more accurate picture of the Debtors' current financial situation.

## DISCUSSION

The Debtors' pending Motion asks this Court to excuse the Debtors from the requirement that they file Schedule I, Schedule J, and Form 22, as well as to allow the Debtors' CMI to be determined under 11 U.S.C. § 101(10A)(A)(ii). Section 101(10A)(A)(ii) provides that a debtor's CMI may be calculated as a six-month average of income ending on a date other than the last day of the calendar month immediately preceding the date of filing, "if the debtor does not file

---

[3] The Motion provides that if Form 22 was filed by the Debtors, their CMI would have been $1,718.71. The Court believes this amount is incorrect as the Motion later provides the CMI based on Form 22 is $6,932.49.

the schedules of current income required by § 521(a)(1)(B(ii)." This alternative date may be any date which the court deems appropriate.

  The Supreme Court of the United States addressed this alternative approach in its recent decision <u>Hamilton v. Lanning</u>, while at the same time addressed the broader issue of whether a bankruptcy court "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." <u>Hamilton v. Lanning</u>, __ U.S. __, 130 S. Ct. 2464, 2478 (2010). In <u>Lanning</u>, the debtor filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code in October 2006. <u>Id.</u> at 2470. At the time of filing, the debtor had $36,793.36 in unsecured debt. <u>Id.</u> In accordance with 11 U.S.C. § 101(10A)(A)(i), the bankruptcy court calculated debtor's CMI based on the average income from the six months prior to the filing, April through October 2006. <u>Id.</u> Within this six month period, debtor received a "one-time buyout from her former employer." <u>Id.</u> This one-time buyout greatly inflated debtor's average monthly income for April 2006 to $11,990.03 and to $15,356.42 for May 2006. <u>Id.</u> As a result, debtor's CMI for April through October 2006 was $5,343.70 and her monthly expenses, as calculated pursuant to 11 U.S.C. § 707(b)(2), were $4,228.71. <u>Id.</u> In accordance with the inflated income calculation, the debtor reported a monthly disposable income of $1,114.98 on Form 22C. <u>Id.</u> The debtor reported a monthly income of $1,922.00 per month from her new job on Schedule I, and on Schedule J, the debtor reported her actual monthly expenses of $1,772.97. <u>Id.</u> Subtracting the debtor's actual monthly expenses from her actual monthly income, the debtor was left with a monthly disposable income of $149.03. <u>Id.</u> Therefore, the debtor filed a plan that required a $144.00 payment per month for 36 months. <u>Id.</u>

In Lanning, the Chapter 13 trustee objected to the proposed plan on the grounds that the plan required the debtor to pay less than the "full amount of the claims against her" and because debtor's projected disposable income, based on Form 22C, of $1,114.98 should have allowed for more money to be paid to unsecured creditors. Id. The trustee advocated a mechanical approach to calculating projected disposable income, which involves multiplying disposable income as was calculated on Form 22C by the necessary commitment period. Id. at 2471. Applying the mechanical approach would have resulted in debtor's payments drastically increasing to $756.00 per month for a period of 60 months. Id. Such an inflated payment amount would have rendered the debtor unable to make her monthly payments. Id.

In addressing the arguments of the trustee and the debtor, the Supreme Court considered the different approaches to calculating projected disposable income and held that when calculating a debtor's projected disposable income, a bankruptcy court may "account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." Id. at 2478.

In its decision, the Supreme Court criticized the common practice of debtors with "unusually high income[s] during the 6 months prior to the filing of a petition, seek[ing] leave to delay filing a schedule of current income (Schedule I) and then ask[ing] the bankruptcy court to exercise its authority under § 101(10A)(A)(ii) to select a 6-month period that is more representative of the debtor's future disposable income." Id. at 2476. The Court found "little merit in this convoluted strategy[,]" and noted that the Bankruptcy Code "does not insist upon rigid adherence to the mechanical approach in all cases" and such rigid adherence would "improperly undermine what the Code demands." Id. at 2476-77. Instead, the Supreme Court

5

endorses a forward looking approach, where the bankruptcy court or trustee can take into consideration changes in a debtor's income "that are known or virtually certain at the time of confirmation." Id. at 2478.

Prior to the Supreme Court rendering its decision in Lanning, this Court previously endorsed this practice of excusing the filing of Schedule I and allowing a different six month period to be used where a significant change in disposable income had occurred.[4] This procedure provided the debtors and the trustees some flexibility when the mechanical and historical approach to computation of CMI under § 1325(b)(2) and § 101(10A) as interpreted by this Court in In re Alexander,[5] and In re Musselman,[6] sometimes fostered harsh results where a debtor's income was significantly reduced just prior to or after the date of filing the petition.

---

[4] *See* In re Distler, 2009 WL 1651446 (Bankr. E.D.N.C. 2009)(noting that the court should consider the totality of the circumstances and the good faith request of the debtor for the change in computation); In re Hoff, 402 B.R. 683, 686 (Bankr. E.D.N.C. 2009)(noting that if "debtors were forced to use their pre-petition six-month average as their current monthly income [when there is significant, involuntary decrease in actual income], their plan would not be feasible"); In re Cummisky, 2008 WL 6045992 (Bankr. E.D.N.C. 2008)(finding that in certain situations, when the debtor's current monthly income as calculated using the six months prior to filing inaccurately reflects the debtor's actual monthly income, the court may grant another six month period that is more representative of debtor's actual monthly income); In re Geatz, Bankruptcy Case No. 08-01384-8-JRL (Bankr. E.D.N.C. May 21, 2008)(allowing debtors to re-file Schedule I in order to calculate debtors' current monthly income using a different six month period than that immediately preceding debtors' bankruptcy petition); In re McQueen, 2007 WL 6370888 (Bankr. E.D.N.C. 2007)(allowing the debtor to re-file Schedule I in order to more accurately reflect debtor's actual current monthly income); In re Ingram, 2006 WL 6070518 (Bankr. E.D.N.C. 2006) (allowing the court to determine another date on which current monthly income can be computed if the debtor did not file Schedule I).

[5] 344 B.R. 742 (Bankr. E.D.N.C. 2006) (holding that projected disposable income for above-median debtors is disposable income as defined by § 1325(b)).

[6] 379 B.R. 583 (Bankr. E.D.N.C. 2007) (finding that "projected disposable income" for above-median debtors is equivalent to "disposable income" which is computed by averaging what the debtor earned during the six month period preceding petition date) *rev'd on other grounds* Musselman v. eCast Settlement Corp., 394 B.R. 801, 813 (E.D.N.C. 2008)(affirming "projected disposable income" computation).

The case at bar presents a factual situation similar to the facts in Hamilton v. Lanning. __ U.S. __, 130 S. Ct. 2464 (2010).  Here, the six month computation of projected disposable income is inflated because of the inclusion of the one time withdrawal of $10,000.00 from the male debtor's retirement account.  In Lanning, the six month computation of projected disposable income was inflated because of the one time buyout from debtor's former employer. Id. at 2470.

When completed properly, Schedule I reflects the actual projected monthly income at filing and, in accordance with Lanning, should be used in calculating a debtor's ability to pay going forward.  Striking Schedule I does not enhance the trustee or court's ability to calculate what income may be projected over the course of the plan.  Therefore, the debtor's actual projected disposable income based on salary going forward should be considered without the necessity of moving to excuse filing Schedules I and J, and requesting the court to select another six month period to compute CMI.  The trustee may take the actual expected income as it is at the time of confirmation into account in recommending confirmation of a chapter 13 plan, as opposed to requiring the debtor to engage in this "convoluted strategy" of omitting schedules and establishing new dates to calculate CMI. Hamilton v. Lanning, __ U.S. __, 130 S. Ct. 2464.

Therefore, in accordance with the forward-looking approach set forth by the Supreme Court in Hamilton v. Lanning, and the Supreme Court's description of the debtor's motion as a "convoluted strategy," Debtors' Motion is **DENIED**.

The Chapter 13 trustee shall make a recommendation for or against confirmation with all of the available income and expense information as determined as of the petition date from

Schedules I and J and such income and expense information that is "known or virtually certain at the time of confirmation." Id.

**SO ORDERED.**

**END OF DOCUMENT**